IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TALI ARIK, M.D.,

        Plaintiff,

vs.                                No. CIV-03-1213 WJ/LCS

LEA REGIONAL HOSPITAL, LLC
d/b/a LEA REGIONAL MEDICAL CENTER,
a foreign corporation,

        Defendant.

## COURT'S DECISION FROM SUMMARY TRIAL

THIS MATTER comes before the Court for trial on the merits pursuant to the Order Setting Summary Trial (Doc. 21) which contained the summary procedures the parties stipulated to for trial. The parties had previously submitted stipulated facts (Doc. 27) and in view of the summary trial procedures agreed to by the parties, the Court will dispense with the issuance of formal findings of fact and conclusions of law.

Tali Arik, M.D. ("Arik" or "Plaintiff"), filed his complaint against Lea Regional Hospital, LLC ("Hospital" or "Defendant") asserting claims for relief under theories of misrepresentation and breach of contract. Defendant counter-claimed against Plaintiff for breach of contract under a theory of anticipatory breach.

During the early months of 2002, Plaintiff and Defendant negotiated the terms of a contract which the parties referred to and which hereinafter shall be referred to as the Recruiting Agreement, which became effective July 1, 2002. The stated purpose of the Recruiting Agreement was for Arik, a cardiologist, to relocate to Hobbs, New Mexico and for the Hospital

to assist Arik in establishing his medical practice in Hobbs.  To that end, the Recruiting Agreement provided Arik with an income guarantee in the amount of $77,083.33 per month for a period of 18 months.  Arik was also to be reimbursed for marketing expenses not to exceed $5,000.00, moving expenses not to exceed $15,000.00 and Arik was paid a signing bonus of $80,000.00.  The income guarantee was treated as a loan that would be forgiven in 1/42nd increments over a period of 42 months following the 18 month income guarantee period.  Under the terms of the Recruiting Agreement, Arik was required to maintain a full time medical practice in Hobbs for a minimum of five years.  The Recruiting Agreement also provided that if Arik failed to maintain a full time medical practice in Hobbs before the expiration of the five year time period, Arik would have to reimburse the Hospital for the income guarantee payments made to him plus the signing bonus, relocation and marketing expenses paid to Arik by the Hospital.

In my opinion, the outcome of this case depends on what occurred at a meeting on June 17, 2003, between Plaintiff and Larry Bozeman ("Bozeman"), Chief Executive Officer of the Hospital.  According to Bozeman's testimony, Arik stated at the meeting that "I'm leaving Hobbs."   Bozeman also testified that Arik made inquiry whether the hospital would pursue him for the sums paid under the income guarantee provision of the Recruiting Agreement.  Arik denies that he stated that he was leaving Hobbs and Arik essentially testified that he stood ready to perform his contractual obligations at all times and only left Hobbs as a last resort after the Hospital had ceased making the income guarantee payments.

In terms of judging witness credibility, I find Bozeman to be a very credible witness in sharp contrast to Arik, who I do not consider to be credible.   Moreover, the circumstantial

evidence presented corroborates Bozeman's testimony.

The testimony of John Goodman and the assessment prepared by John Goodman & Associates, Inc., clearly establishes that the Hospital wanted to develop a cardiology program to serve the residents of Southeastern New Mexico. Given the commitment of resources by Defendant for the development of a cardiac program, there was simply no motive for Bozeman or Defendant to breach the Recruiting Agreement and run Arik out of town.

Arik's own conduct is not consistent with Defendant forcing him to leave Hobbs. For example, Arik never spoke with Bozeman or anyone else at the Hospital about Arik not receiving his June income guarantee check. Additionally, when Arik met with members of the medical community in Hobbs on or about July 15, 2003, Arik stated he was leaving Hobbs because of the failure of various Hobbs physicians to refer cardiac patients. While Arik did present evidence to the effect that he had worked out some practice arrangement with Dr. William Brazwell, to begin practicing with him in the latter part of July, 2003, Arik has admitted that by July 31, 2003, he had accepted a position in a cardiology practice in Las Vegas, Nevada and around the same time, Arik had made arrangements to move his personal belongings from Hobbs to Las Vegas.

Based on the evidence and legal arguments presented, I find and conclude that the Hospital has met its burden of proving the required elements under anticipatory breach of contract. See *Gilmore v. Duderstadt*, 125 NM 330 (Ct. App. 1998); *Hoggard v. City of Carlsbad*, 121 NM 166 (Ct. App. 1996). Moreover, I find and conclude that Arik has failed to meet his burden of proving that the Defendant breached the Recruiting Agreement and has failed to prove any negligent or fraudulent misrepresentation.

Having determined that Arik committed an anticipatory breach of the Recruiting

Agreement, the Court must now determine the Hospital's damages.  Under the terms of the Recruiting Agreement, Arik contractually agreed that if he ceased to maintain a full time medical practice in Hobbs prior to the expiration of the five year time period set forth in the Recruiting Agreement, then Arik would reimburse Defendant for the income guarantee payments made to him and the signing bonus relocation and marketing expenses advanced by the Hospital.  The evidence presented at the summary trial establishes that the sums paid to Arik by the Hospital total $819,590.68.

Finally, I was struck by Arik's statement while he was testifying that he was overly qualified as a cardiologist to practice in Hobbs.  While Arik may have been overly qualified as a cardiologist in his mind, he sure didn't hesitate to accept from the hospital the $80,000 signing bonus and income guarantee payments totaling $819,590.68.  Arik's conduct reminds me of a New Mexico bankruptcy case involving a doctor who filed bankruptcy to discharge debts owed his creditors including his ex-wife.  In denying the doctor's discharge, the bankruptcy judge stated: "There is a principle of too much; phrased colloquially, when a pig becomes a hog it is slaughtered."  In re Zouhar, 10 B.R. 154, 157 (Bankr. D.N.M. 1981) (quoting Dolese v. United States, 605 F.2d 1146, 1154 (10th Cir. 1979)).  That principle fully applies in this case.

Judgment shall issue in favor of Defendant and against Plaintiff for $819,590.68.

**IT IS SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE